ROBERT E. and MARCINE HILYARD *v.*
DEPARTMENT OF REVENUE

William H. Replogle II, Pattullo, Gleason & Scarborough, Portland, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiffs rendered October 25, 1974.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appeal from defendant's Order No. I-74-20, dated May 28, 1974, denying the full deduction of plaintiffs' unreimbursed expenses claimed on their 1969, 1970 and 1971 personal income tax returns, allegedly incurred "while away from home in the pursuit of a trade or business," and therefore deductible under ORS 316.007, 316.012 and the Int Rev Code of 1954, § 162 (a) (2).

During the tax years involved, plaintiff Robert E. Hilyard had a California real estate license and engaged in the sale of land in numerous recreational developments in California. (He was not licensed to sell real estate in Oregon.) In addition, during the 1969 and 1970 tax years, Mr. Hilyard worked as a "casual checker" on the Portland waterfront but was unable to obtain permanent employment as a dock worker due to his uncertain health.

Mr. Hilyard suffered from an advanced case of tuberculosis in 1940, necessitating the partial removal of both of his lungs and restricting his breathing capacity to approximately 42 percent of normal. As a result of his impaired breathing capacity and general poor health, Mr. Hilyard was frequently incapacitated

and therefore was unable to retain a position requiring scheduled work attendance.

These physical restrictions have also limited his employment in the real estate field. He was unable to accompany clients through large areas of property or through multi-level property. He cannot walk a short distance or climb a few flights of stairs without difficulty. The existence of numerous recreational development areas in California which Mr. Hilyard could view with the aid of a four-wheel drive vehicle, together with the need for realtors to help close sales "in office," without viewing the recreational property, enticed him to seek work in California.

Plaintiffs have continuously maintained a home in Portland since the early 1950's. Due to Mr. Hilyard's poor health, Mrs. Hilyard has been the mainstay of the family unit, being regularly employed throughout her married life. During the tax years in question, the plaintiffs' gross income evolved from the following sources:

| Tax Year | Mrs. Hilyard's Gross Income, All from Oregon | Mr. Hilyard's Gross Income | |
| --- | --- | --- | --- |
| | | Oregon | California |
| 1969 | $ 8,500 | $2,820 | $12,313 |
| 1970 | 11,366 | 672 | 5,810 |
| 1971 | 10,911 | — | 5,663 |

Mrs. Hilyard's income during this period was derived from a salaried position, requiring only nominal employment expenses. Mr. Hilyard's gross income consisted of commissions on the various properties that he sold. He was entitled to deduct business expenses incurred in seeking potential buyers. In 1970 and 1971, his total business expenses were almost twice as great

as the respective income for each year, which further points out the reliance of the family on Mrs. Hilyard's income.

The dispute in this case revolves around whether or not Mr. Hilyard's California expenses meet the requirements for deductibility under Int Rev Code of 1954, § 162, used in determining Oregon's taxable income (ORS 316.062). The pertinent part of § 162 states that:

"(a) *In General.*—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

"(1) * * *;

"(2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *."

The defendant denied the deduction of Mr. Hilyard's unreimbursed expenses on the grounds that they were not incurred while "away from home." The defendant did not dispute plaintiff's assertion that these expenses were made in pursuit of his "trade or business," which was the free-lance sale of real estate on a strict commission basis. Section 162 of the Internal Revenue Code is the pertinent section that the court must rely upon in determining whether or not Mr. Hilyard's expenses were deductible (ORS 316.007).

The Department of Revenue asserts that the majority of plaintiff's expenses were not incurred while "away from home" and, therefore, under Int Rev Code of 1954, § 262, are nondeductible personal living expenses. The Department of Revenue contends that the

plaintiff-husband established regular places of business in California and so the majority of his expenses were not incurred while "away from home."

An initial reading of Int Rev Code of 1954, § 162 (a)(2), which does not define "home," would lead a layman to apply the everyday meaning of "home," which is the place where a person lives. This definition often would not conflict with the purpose of § 162, which is to allow a deduction for the duplication of living expenses required by a taxpayer's business or trade or in the course of his employment. Such duplication occurred in the present case, in that Mr. and Mrs. Hilyard continued to maintain their Portland home while he was expending money on motel rooms and apartments near the site of California recreational developments.

The cases construing § 162 (a)(2) have given various interpretations to the meaning of "home" and its meaning at this time is still in a state of flux. The initial Supreme Court case involving the definition was *Commissioner v. Flowers,* 326 US 465, 66 S Ct 250, 90 L Ed 203, 46-1 USTC ¶ 9127, 34 AFTR 301 (1946). In that case, the Supreme Court held that a taxpayer who lived in Mississippi and worked for a railroad at its principal place of business in Alabama could deduct only those expenses which were directly incurred in and for the railroad's business. The taxpayer was denied any deduction for his personal travel expenses between his home and the railroad's Alabama home office. This decision, therefore, eliminates deductions under Int Rev Code of 1954, § 162, for expenses necessitated only by the taxpayer's choice of the place where he wants to live. The definition of "home" was further broadened to include the general vicinity of the tax-

payer's principal place of business, to deter taxpayers from attempting to deduct ordinary commuting expenses. Rev Rul 56-49, 1956-1 Cum Bull 152.

In *Commissioner v. Peurifoy,* 254 F2d 483 (4th Cir 1957), 57-2 USTC ¶ 10,045, 52 AFTR 1691, *aff'd,* 358 US 59 (1958), the Fourth Circuit added an additional variable to the definition of "home" in that the deductions could be claimed if the taxpayer's employment could be shown to be "temporary," rather than "indefinite" or "indeterminate." This requirement was further explained in *Commissioner v. Stidger,* 386 US 287, 87 S Ct 1065, 18 L Ed2d 53, 67-1 USTC ¶ 9309, 19 AFTR2d 959 (1967). In that case, the court took notice of the continued disagreement among the circuit courts over whether "home" meant the taxpayer's principal place of business or employment, or meant his residence. The court, while not specifically holding that "home" meant the principal place of business, nevertheless recognized the Commissioner's long-standing position that "home" should be thus interpreted.

In *Six v. United States,* 450 F2d 66 (2d Cir 1971), 71-2 USTC ¶ 9694, 28 AFTR2d 71-5839, the court further clarified the definition of "home" when a taxpayer's permanent residence was located in a different city than his principal place of business. In that case, the court held that a taxpayer's place of business became his "home" unless the situs of his work was too indefinite to lead a reasonable person so employed to move his permanent residence. Thus the court adopted the logical definition of "home" found in *Rosenspan v. United States,* 438 F2d 905 (2d Cir 1971), 27 AFTR2d 71-707, *cert denied,* 404 US 864

(1971), *reh denied,* 404 US 959 (1971). *Rosenspan*
held, at 912:

> "* * * When an assignment is truly temporary,
> it would be unreasonable to expect the taxpayer to
> move his home, and the expenses are thus compelled
> by the 'exigencies of business'; when the assign-
> ment is 'indefinite' or 'indeterminate,' [in length
> of time] the situation is different and, if the tax-
> payer decides to leave his home where it was, dis-
> allowance [of a deduction] is appropriate, not be-
> cause he has acquired a 'tax home' in some lodging
> house or hotel at the worksite but because his fail-
> ure to move his home was for his personal con-
> venience and not compelled by business necessity.
> * * *"

Such a definition is logical in that it applies the normal
meaning of residence to "home," while preventing abuse
of the deduction through the allowance of expenses
which technically are commuting expenses, in that they
are dictated by the taxpayer's preference in the loca-
tion of his residence rather than necessitated by his
business or trade.

The Commissioner of Internal Revenue has also
adopted the general rule of *Rosenspan, supra,* in Rev
Rul 60-16, 1960-1 Cum Bull 58, 68, by holding

> "* * * [if] a worker has a family with a fixed
> residence * * * [and] there is a shortage of work
> in the locality where the family resides, or a short-
> age of sufficient work there to provide year-round
> employment, * * * [then] [i]n the absence of
> persuasive evidence to show otherwise, it would be
> reasonable to conclude on such facts that the tax-
> payer is not an itinerant worker but has a 'home'
> for traveling expense purposes in the locality
> where he normally lives with his family and makes
> his employment contacts, and also that his employ-
> ments elsewhere are 'in the pursuit of business' and
> under the third condition of the *Flowers* rule."

This Revenue Ruling points out the importance of viewing each individual case on the facts. Where the facts are such that the employment is "temporary" (as opposed to "indefinite" or "indeterminate") and, therefore, the movement of the household residence to the area of such employment is unreasonable, then the tax home of the taxpayer shall be his permanent residence. See *Dennis D. Goodman,* 30 CCH Tax Ct Mem 1369 (1971).

▮▮ In the case of Mr. Hilyard, the facts are such that his employment as a salesman at the various places in California was temporary in nature (due to the limited number of properties to be sold and his inability to hold down a job because of his poor health). In addition to this, the court must not lose sight of the fact that Mrs. Hilyard was the mainstay of the family and, therefore, her job, coupled with Mr. Hilyard's inability to maintain permanent employment, would, under Rev Rul 60-16, allow for the deduction of Mr. Hilyard's business expenses under Int Rev Code of 1954, § 162 (a)(2). (The requirement that the "home" of a working husband and working wife be independently determined, as laid down in such cases as *Robert A. Coerver,* 36 TC 252 (1961), *aff'd per curiam,* 297 F2d 837 (3d Cir 1962), 9 AFTR2d 585, is not applicable in that the reliance on Mrs. Hilyard's income is not used to establish the "home," but rather to determine the reasonableness of moving Mr. Hilyard's home to the various temporary job positions.)

▮ This would also be the finding under Rev Rul 73-529, 1973-49 Int Rev Bull 9 (December 3, 1973), which gives an objective test for the determination of "home" where a taxpayer has no regular or principal place of business due to the nature of his trade or

business. Rev Rul 71-247, 1971-1 Cum Bull 54, requires that a taxpayer's business be examined to determine whether or not he has a principal or regular place or places of employment. In the case of Mr. Hilyard, the facts are that during the tax years in question his employment in each instance was intended to be, and in fact was, of very short duration (the longest association during the years in question lasting less than 6 months). Rev Rul 60-16 states the general rule that employment anticipated to last less than a year will be considered temporary and, as such, qualifies for the § 162 (a)(2) deduction unless tax avoidance motives are present. Because Mr. Hilyard worked in several geographical areas, the determination of his "home" would be ruled by the objective tests set out in Rev Rul 73-529 (which is designed to deal with the independent contractor and traveling salesmen). In that ruling, the Commissioner of Internal Revenue determined that a taxpayer will have a "regular place of abode in a real and substantial sense" and, therefore, will have a "home" for traveling expense deduction purposes, if he:

"(1) * * * performs a portion of his business in the vicinity of his claimed abode and uses such abode (for purposes of his lodging) while performing such business there;

"(2) * * * [his] living expenses incurred at his claimed abode are duplicated because his business requires him to be away therefrom; and

"(3) * * *

"(a) has not abandoned the vicinity in which his historical place of lodging and his claimed abode are both located,

"(b) has a member or members of his family (marital or lineal only) currently residing at his claimed abode, or

"(c) uses his claimed abode frequently for purposes of his lodging."

The Internal Revenue Service recognizes the taxpayer's regular place of abode as his "home" for traveling expense deduction purposes if he satisfies two of the three objective factors and is not an itinerant who has a "home" wherever he works.

For the 1969 and 1970 tax years, there is no question that Mr. Hilyard meets all three tests in that he performed work in the Portland area. Even in the disputed 1971 tax year, the maintenance of the taxpayer's permanent home in Portland plus the fact that he continued to send money to support it negates the classification as an itinerant and qualifies his traveling expenses as deductible under Int Rev Code of 1954, § 162 (a)(2).

On the facts presented, the court finds that the unreimbursed business expenses claimed for the tax years 1969, 1970 and 1971 are properly classified as "§ 162 (a)(2)" expenses. Defendant's Order No. I-74-20 is therefore reversed, subject to the Department of Revenue's findings that the expenses claimed therein are in accordance with the limitations set out in Rev Proc 70-25, 1970-2 Cum Bull 506 (§ 3.01).